IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MIKE C. WARD,<br><br>                Plaintiff,<br>v.<br><br>SALLY JEWELL, in her official capacity as Secretary, United States Department of the Interior,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:10-CV-87<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant's Motion for Summary Judgment. The court held a hearing on the motion on November 20, 2013. At the hearing, Plaintiff Mike C. Ward was represented by Nan T. Bassett, and Defendant was represented by Jeffrey E. Nelson and Susannah Thomas. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the motion under advisement, the court has further considered the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Ward has been employed in various positions with the Bureau of Reclamation ("BOR") since 1982. By 1998, Ward was selected as a Manager, Acquisition Management Division ("AMD"), in BOR's Salt Lake City branch. Later, during the beginning of 2005, changes in AMD resulted in Ward being reassigned to the position of Contract Specialist, Chief of the Contracting Office. This reorganization was in part due to ineffective management resulting from personality conflicts arising between then-manager, Ward, and his subordinate supervisors,

Ms. Pastell and Ms. Nelson. As a result of his reassignment, Ward was relieved of his supervisory duties, but he retained his pay and benefits. James Durrant was given the supervisory duties over AMD as the newly created Program Manager.

In April/May of 2005, Ward filed a grievance regarding his loss of supervisory duties. Subsequently, Ward filed an Equal Employment Opportunity ("EEO") complaint, a protected action under Title VII, and later brought a lawsuit in 2008 claiming his loss of supervisory duties was in retaliation for his participation in EEO matters brought by several AMD employees. This claim was dismissed for not being timely filed, but was appealed and then voluntarily dismissed in January 2009.

In the fall of 2008, the increasing number of employees in the AMD led the Program Manager to delegate some of his administrative tasks to other employees. A reorganization team was created that solicited input from AMD employees regarding a proposed restructuring. Ward submitted a proposal whereby he would be reinstated to his prior management duties over AMD. Another proposal, where the Program Manager created two new subordinate supervisory positions, was ultimately chosen. Ward was not reinstated to his old role as head of AMD or to one of the new subordinate supervisory roles. Rather, Brent Rhees, the Deputy Regional Director told Ward that after the "things that went on" and the "things that were not getting done" it would be "essentially impossible" for Ward to be reinstated into a supervisory position. Ward filed an EEO complaint in February 2010, alleging the decision not to reinstate him as a supervisor was in retaliation for his EEO complaints and activities.

During June 2010, BOR's Provo Area Manager retired and Plaintiff applied for the vacant position. A three-person panel consisting of Deputy Region Directors, Brent Rhees and Ann Gold, and Technical Services Director Lowell Primley interviewed qualified candidates for

the position. The panel deemed Ward to be qualified and it granted him an interview. Then, along with four other candidates, Ward was given a second interview with Regional Director Larry Walkoviak. The Regional Director ultimately chose the then-current Deputy Provo Area Manager, Curt Pledger, for the position. Ward was informed in October 2010 that he had not been selected. In December 2010, Ward filed an EEO complaint regarding his non-selection. On January 31, 2010, Plaintiff amended his already existing complaint to include a claim alleging that his non-selection as Provo Area Manager was in retaliation for his prior EEO complaints and activities.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56, Defendant moves for summary judgment as to both of Ward's Title VII retaliation claims. Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and thus the moving party is entitled to judgment as a matter of law. *Id.* Additionally, if the interpretation arrived at by the nonmoving party is reasonable, the trial judge should not select from among reasonable inferences. *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1092 (10th Cir. 2007). In the present case there are no disputed material facts and, therefore, the court is left to evaluate whether the Defendant is entitled to judgment as a matter of law.

In Title VII cases, this court is guided by a three-part framework to evaluate whether a claim exists for unlawful discriminatory action. *See e.g., Texas Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). First, Ward bears the burden of proving a prima facie case of retaliation by a preponderance of the evidence. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Second, if Ward establishes a

prima facie case, a burden of production shifts to Defendant to show that the action was taken for a legitimate, nondiscriminatory reason. *Burdine*, 450 U.S. at 252-53. However, the "ultimate burden" of persuasion remains at all times with the plaintiff. *St. Mary's*, 509 U.S. at 516 (citing Federal Rule of Evidence 301). Thus, if Defendant satisfies its burden of producing evidence that the action was taken for legitimate nondiscriminatory reasons, Ward has the burden of establishing that Defendant's proffered explanation for the adverse action is pretextual. *Burdine*, 450 U.S. at 253. A showing that the proffered explanations may be pretextual, however, is not itself a basis for finding for Ward. Rather, the court must still be persuaded that the action taken was in direct retaliation for the protected action Ward took. *See St. Mary's*, 509 U.S. at 515-16.

### A.     Prima Facie Case

First, Ward must establish a prima facie case by a preponderance of the evidence and thus "create[] a presumption that the employer unlawfully discriminated against the employee." *Burdine, supra,* at 254, 101 S.Ct., at 1094. "To establish a 'presumption' is to say that a finding of the predicate fact (here, the prima facie case) produces 'a required conclusion in the absence of explanation' (here, the finding of unlawful retaliatory discrimination)." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, (1993) (quoting D. Louisell & C. Mueller, Federal Evidence § 67, p. 536 (1977)). The Tenth Circuit employs a three-part test to determine when the plaintiff establishes a prima facie case; however, in the present case, Defendant contests only the required element of proving a causal connection between Ward's protected activity and the materially adverse action. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

The Tenth Circuit has found a causal connection exists between the protected activity and the materially adverse action "where the plaintiff presents evidence of circumstances that justify

4

an inference of retaliatory motive." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007). Courts typically consider "protected conduct *closely followed* by adverse action" as sufficient evidence. *Id.* (emphasis added). However, when sufficient time has elapsed between the protected conduct and the adverse action, a court requires "additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999); *see e.g., Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) (showing one and one-half months establishes causation while three months is too long and does not).

When analyzing the additional evidence, the court can consider all the proffered evidence of retaliatory motive, which includes pretextual evidence. *Xia v. Salazar*, No. 12-4034, 2012 WL 5909096. at *3 (10th Cir. Nov. 27, 2012), *rev'd on other grounds.* In order to make a prima facie case, one must only introduce evidence from which an inference can be drawn that an employer would not have taken the adverse action had the employee not filed prior discrimination charges. *Burdine*, 450 U.S. at 253. Moreover, under Tenth Circuit jurisprudence, if the inference arrived at by the nonmoving party is reasonable, the trial judge should not select from among reasonable inferences. *Williams v. W.D. Sports, N.M., In.c*, 497 F.3d 1079, 1092 (10th Cir. 2007). Ultimately, the burden of establishing a prima facie case is not onerous. *Burdine*, 450 U.S. at 253. "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (affirming grant of summary judgment to employer because "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings").

In *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), the Supreme Court held that a plaintiff in a Title VII retaliation case cannot prove a causal connection between his EEO activity and the challenged decision merely by showing that a retaliatory intent was one of the factors influencing the decision. *Id.* at 2532-33. Rather, the retaliatory intent must be shown to be "the" motivating factor. In other words, the challenged decision would not have been made "*but for*" the retaliatory intent. *Id* (emphasis added).

In this case, Ward argues that a reasonable jury could determine based on the evidence presented that there was a causal link between the EEO complaints and the adverse action of Ward's non-selection for a supervisory role in both causes of action. However, Ward concedes that the adverse action did not closely follow the protected activities, and thus a causal connection must be inferred from circumstantial evidence. Ward contends that there is evidence sufficient to draw "an inference" that the "employer would not have taken adverse action had [the] employee not filed discrimination charges." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In relation to the first cause of action—Ward not receiving a supervisory position during the reorganization of 2009—Ward argues contends that there is an inferential link between his EEO complaints and being told that it would "virtually impossible" to put him in a supervisory role. Additionally, Ward argues that Defendant's decision to decrease one of Ward's discretionary bonuses from $4,500 to $2,000 further raises an inference of retaliatory motive by Defendant. In relation to the second cause of action—Ward being passed over for the Provo Area Manager position—Ward asserts that the following facts demonstrate evidence of a causal connection: 1) Walkoviak was aware of Ward's previous protected activities, 2) the initial interviewing panel did not recommend Ward for a further interview, and 3) the initial

interviewing panel had two members who had been named as defendants or were related to named defendants in one of Ward's Equal Employment Opportunity Act claims.

The court concludes that while these facts are undisputed, they do not create a prima facie case. Rather, Ward's assertions rise, at most, to mere speculation and surmise. In relation to the first cause of action, the facts presented fail to raise an inference because the court is forced to do more than infer the motives of the employees of the Department of the Interior, but to conjecture as to why a discretionary bonus was reduced. Additionally, this court cannot infer from a statement that it would be "virtually impossible" to put Ward in a supervisory role that a retaliatory agenda was being enacted against him. This comment alone cannot lead to an inference but, rather, forces this court into further conjecture and surmise without adequately pointing to anything more than an offhanded comment.

Regarding the second cause of action, threat or pendency of ongoing litigation is not sufficient to establish a presumption of a causal connection. *Proctor v. United Parcel Service,* 502 F.3d 1200, 1209 (10th Cir. 2007). Had the panel of Rhees and Gold made the final decisions with respect to who was hired, or had this panel's actions resulted in Ward not receiving a second interview, then sufficient evidence would likely have been presented. *See E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles,* 450 F.3d 476, 487-88 (10th Cir. 2006) (stating that to prevail on a subordinate bias claim, a plaintiff must establish more than mere "influence" or "input" in the decision making process). However, Walkoviak's decision to interview all five candidates even if they had not been recommended to proceed to a final interview defeated any causal link that may have existed. *Id.* (stating that causal link is defeated when an employer has taken care not to rely exclusively on a biased subordinate). Thus, even viewing the facts in a light most favorable to Ward, there is no causal link between Walkoviak's decision not to select

Ward and Ward's previous EEO complaints. Any potential link is defeated by Walkoviak's decision to interview all the candidates. Merely citing that Walkoviak had knowledge of Ward's EEO complaints is not enough because it requires this court to engage in conjecture on Walkoviak's motives. Therefore, no reasonably jury could conclude by a preponderance of the evidence presented that Walkoviak's decision not to select Ward as the Provo Area Manager was in retaliation to Ward's previous protected actions.

Finally, Ward has failed to show retaliation as more than a potential motivating factor. Under *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), Ward is required to show that the challenged decisions would not have been made "*but for*" the retaliatory intent. Even when reviewing the evidence presented in a light most favorable to Ward, no reasonable jury could find the evidence presented establishes an "inference" that Defendant "would not have taken adverse action" but for Ward engaging in protected activity. Ward's conjecture that there is a causal link is not enough to establish causation. Rather, some evidentiary support that could lead to an inference is required. Accordingly, Defendant is entitled to summary judgment because Ward has failed to establish a prima facie case of retaliation with respect to either claim.

### B. Pretext

Even if the court were to conclude that Ward established a prima facie case for both causes of action, Ward has further failed to prove that Defendant's proffered legitimate reasons are pretextual. "If the [employee] succeeds in proving the prima facie case, the burden shifts to the [employer] to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 93 S.Ct. at 1824. When the burden shifts to the employer, it must "rebut the presumption of discrimination by producing evidence that the

[employee] was rejected, or someone else was preferred, for a legitimate, non[-retaliatory] reason." *Burdine*, 450 U.S. at 254-56. In *Burdine*, the Supreme Court held that "the [the employer] need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, the burden is best described as

> "[s]ufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity."

*Id.* at 254-56.

The employee must then show that the employer's proffered reasons are merely pretextual, or a cover for a true retaliatory intent. A proffered reason is not considered pretextual "unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515. The plaintiff must demonstrate that the proffered reason was "so incoherent, weak, inconsistent, or contradictory that a rational factfinder would conclude the reason [is] unworthy of belief." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)). Thus, the court is not required to judge if a decision was "wise, fair or correct, but whether [the employer] honestly believed the reasons [it gave for its conduct] and acted in good faith on those beliefs." *Johnson v. Weld Cnty*, 594 F.3d 1202, 1211 (10th Cir. 2010). The employee must establish more than that the "employer got it wrong." *Id.* "[The employee] must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden [retaliatory] agenda." *Id.*

In response to the first cause of action, Defendant asserts that the motive for the 2009 reorganization was that Program Manager Durrant was overburdened with administrative tasks and the creation of two subordinate supervisory positions was intended to alleviate some of those time-consuming responsibilities. Defendant states that Ward was not reinstated into a supervisory role as either the head of AMD or as one of the new subordinate supervisors because of past personality conflicts and management problems. Four years earlier, when Ward was the manager of AMD, his conflicts with staff members led to his removal, and many of the same staff remained when he applied for a supervisory role during the 2009 reorganization. Additionally, Ward was fulfilling his role as the Contract Specialist, Chief of the Contracting Office, effectively, as evidenced by the consistent bonuses he was receiving. Thus, the reason Ward was not given a supervisory position was because he was better suited for his Contract Specialist job and his past difficulties in managing disqualified him from being the best candidate for a supervisory role.

Additionally, although Ward proposed that the reorganization include his reinstatement as manager, changes with the Program Manager position were not being considered. The reorganization team did not find any need to replace Durrant, but, rather, was only look for ways to relieve some of the time consuming responsibilities placed on him.

In response to the second cause of action, Defendant claims that Regional Director Walkoviak had legitimate, non-retaliatory reasons for selecting Curt Pledger over Ward for the Provo Area Manager position. Namely, Defendants states that as the existing Deputy Provo Area Manager Pledger had experience with the local staff, had worked in and had a more proficient knowledge of many different areas, and had extensive experience in the Provo geographic area which made him more knowledgeable of the local issues. In contrast, Ward had

a narrower set of experiences, primarily in contracting and acquisition, and had no experience with the Provo staff. Thus, Defendant contends that substantial evidence demonstrates that Walkoviak's reasons for selecting Pledger were legitimate and not based on retaliation for Ward's prior EEO activities.

The court concludes that Defendant has met its burden of producing legitimate, non-retaliatory reasons for its actions. Accordingly, Ward must demonstrate that Defendant's proffered reasons are merely cover for an actual retaliatory intent. The court notes that because no individual is likely to admit to a retaliatory motive, suspicions of motive are accepted as long as circumstantial evidence leads one to believe these suspicions could be true. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 534 (1993) (Souter, J., dissenting) (noting importance of inference in retaliation cases because "employers who discriminate are not likely to announce their discriminatory motive."); *see also Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

With respect to his first cause of action, Ward contends that Defendant's proffered reasons are a pretext for retaliation because his classification as a 1102 series staff member made him more suited for a supervisory position than Durrant and the reorganizations team's failure to consider the differences in qualifications demonstrates that the team was likely retaliating against Ward for his past EEO complaints. Ward also argues, with respect to his cause of action pertaining to the Provo Area Manager position, that the presence of Rhees and Gold on the selection panel shows that the entire process was tainted because Ward had specifically named Rhees and Gold's husband as discriminating against him and these individuals could have influenced Walkoviak's decision. *See, e.g., Willis v. Marion County Auditor's Office*, 118 F.3d 542, 547 (7th Cir. 1997) ("[T]here can be situations in which the forbidden motive of a

11

subordinate employee can be imputed to the employer because, under the circumstances of the case, the employer simply acted as the "cat's paw" of the subordinate").

However, the court concludes that Ward has failed to present sufficient evidence to convince a reasonable jury that Defendant's proffered reasons for either cause of action were pretextual. A reasonable jury, looking at the evidence in a light most favorable to Ward, could not conclude that retaliatory intent was the only, "but for," reason Ward did not receive a supervisory position during the 2009 reorganization or the Provo Area Manager position. Although Ward is correct that inference is important and valid in a retaliation case, the *Randle* case states that inferences are to be considered only so long as the plaintiff can provide evidence that a reasonable jury could use to find defendant's offered reasons are unworthy of belief. 69 F.3d at 451.

Ward has not presented evidence that would lead a reasonable jury to conclude the proffered reasons were "unworthy of belief." *Hinds*, 523 F.3d at 1197. At most, Ward has offered evidence that might lead a jury to believe that there may have been more than one motive behind Defendant's actions, but he has not presented evidence that the offered reasons are invalid or pretextual. There is no evidence before the court that suggests that the difference in Ward's and Durrant's classification levels demonstrates that Ward would be a better Program Manager than Durrant, that Ward would be a better deputy supervisor than the individuals selected, or that Defendant had any reason to consider moving Ward from a position where he was performing well. Defendant's consideration of Ward's past management difficulties and personality conflicts is not a basis for inferring retaliation. In addition, the reorganization team's decision not to replace its current Program Manager but, rather, provide him with two assistant supervisors, does not provide a basis for inferring a retaliatory motive.

Also, specifically with respect to the selection of the Provo Area Manager position, there is no evidence that the individuals on the panel, who appear to have had conflicts with Ward, had any influence on the final decision. In fact, while they recommended that Ward not receive a second interview, Walkoviak, the final decision maker, granted Ward a second interview. Moreover, Walkoviak's mere knowledge of Ward's past EEO activities is insufficient to infer any motive for retaliation. There is simply no evidence from which to infer that Walkoviak's selection of Pledger, who was highly qualified for the position and who had superior qualifications to Ward's for that particular position, was based on any reason other than Pledger's qualifications.

Relying on *Johnson*, Ward has failed to provide evidence that proves or even suggests that Defendant did not "honestly believe" its reasons. 594 F.3d 1202, 1211 (10th Cir. 2010). Moreover, the court is not to decide whether the Defendant's decisions are the best decisions or the most fair. Rather, the court's role is only to ensure that decisions are not made for improper reasons. The court concludes that, even viewing the facts in a light most favorable to Ward, no reasonable jury could conclude that the "*but for*" reason Ward did not receive a management position in 2009 or the Provo Area Manager Position was because of retaliation for his EEO activities. *See University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013) (emphasis added). The court, therefore, concludes that Defendant is entitled to summary judgment on both causes of action.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Summary Judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendant, each party to bear its and his own costs and fees.

13

DATED this 13th day of January, 2014.

BY THE COURT:

_____
DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE